UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER MOSS, | Case No. 18-cv-06930-DMR (PR) |
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN PART; AND DISMISSING NEGLIGENCE CLAIM WITHOUT PREJUDICE TO FILING IN STATE COURT** |
| T. URIBE, et al., | |
| Defendants. | |

## I.    INTRODUCTION

This is a *pro se* civil rights case filed by Plaintiff pursuant to 42 U.S.C. § 1983 against Salinas Valley State Prison ("SVSP") Correctional Officers Tereasa Uribe and Amanda Garcia as well as SVSP Chief Physician and Surgeon D. Bright.  Plaintiff alleges constitutional violations stemming from a December 1, 2017 incident at SVSP.[1]  Plaintiff seeks injunctive relief and monetary damages.

This action has been assigned to the undersigned magistrate judge.  Pursuant to 28 U.S.C. § 636(c), with written consent of all parties, a magistrate judge may conduct all proceedings in a case, including entry of judgment.  Appeal will be directly to the United States Court of Appeals for the Ninth Circuit.  *See* 28 U.S.C. § 636(c)(3).  Both parties have consented to magistrate judge jurisdiction in this matter.  Dkts. 6, 13.

In an Order dated April 8, 2019, the court found that, liberally construed, the complaint stated cognizable Eighth Amendment claims stemming from the December 1, 2017 incident against Defendant Uribe (for use of excessive force by disregarding Plaintiff's medical chrono and

---

[1] Plaintiff was previously incarcerated at SVSP, and is currently in the Santa Rita Jail.

United States District Court
Northern District of California

1    causing injury by using handcuffs) and Defendant Bright (for failure to provide adequate treatment

2    for Plaintiff's injuries from being handcuffed).  Dkt. 8 at 2-3.  The court also found that Plaintiff

3    stated a cognizable First Amendment claim in his allegations that, on December 3, 2017,

4    Defendant Garcia denied him access to the grievance procedure at the prison.  *Id.* at 3.  The court

5    exercised supplemental jurisdiction over Plaintiff's state law negligence claim, and ordered service

6    of the complaint on Defendants Uribe, Garcia and Bright.  *Id.* at 4.  The court issued a briefing

7    schedule for Defendants to file a motion for summary judgment or other dispositive motion.  *Id.* at

8    4-7.

9        Pursuant to that briefing schedule, and after being granted extensions of time to do so,

10   Defendants filed the instant motion for summary judgment.  Dkt. 20.  Even though Plaintiff was

11   granted an extension of time, he has not filed an opposition to the motion.[2]

12       For the reasons set out below, Defendants' motion for summary judgment is GRANTED,

13   in part, and the remaining negligence claim is DISMISSED without prejudice to filing it in state

14   court.

15   **II.    FACTUAL BACKGROUND[3]**

16       **A.    The Parties**

17       At the time of the events set forth in his complaint, Plaintiff was incarcerated at SVSP.  *See*

---

19   [2] The court may not grant a motion for summary judgment solely because Plaintiff has failed to file an opposition.  *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994) (unopposed motion may be granted only after court determines that there are no material issues of fact).  This is so even if the failure to oppose violates a local rule.  *See Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).  The court further notes that Plaintiff filed a letter dated June 29, 2020 in which he makes conclusory legal statements.  *See* Dkt. 24.  However, it is not clear if Plaintiff intended it to be an opposition.  *See id.*  Defendants have filed a response to Plaintiff's letter indicating that they "do not interpret this letter to be an opposition" because it "has no exhibits, declarations, nor any other admissible evidence or law."  Dkt. 26 at 2.  Further, the court notes that this letter is neither entitled nor labeled as an opposition.  Finally, the court notes that Plaintiff did not sign the letter under penalty of perjury.  Thus, even if the court construed the letter to be an opposition, it cannot be considered in the analysis as it is unverified because Plaintiff failed to sign it under penalty of perjury.  *See* Dkt. 24.

26   [3] This Order contains many acronyms.  Here, in one place, they are:

27   CDCR        California Department of Corrections and Rehabilitation
     CCHCS       California Correctional Health Care Services
28   Chrono      comprehensive accommodation chrono or "restraint alert" chrono
     EHRS        Electronic Healthcare Records System

United States District Court
Northern District of California

1    Dkt. 1 at 5.[4]  During that time frame, Defendants Uribe and Garcia were correctional officers

2    assigned to Facility B, Housing Unit 5 at SVSP.  Uribe Decl. ¶ 1; Garcia Decl. ¶ 1.

3              Defendant Bright, who was SVSP Chief Physician and Surgeon at that time, did not

4    examine or treat Plaintiff between December 1, 2017 and November 15, 2018.  Bright Decl. ¶¶ 2,

5    5.  Plaintiff's health care issues only came to Defendant Bright's attention when he reviewed

6    Plaintiff's electronic healthcare records that related to primary care physician ("PCP") Dr.

7    Javate's[5] July 6, 2018 request for services, as further explained below.  Id. ¶ 7, Ex. A.

8         **B.    Plaintiff's Version**

9              Plaintiff sustained a "gunshot wound to his left arm in 2010 before his incarceration at

10   [SVSP]," and "suffers from a disability to his arm."  Dkt. 1 at 5.  He has a "special medical

11   chrono[6] for handcuffs."  Id. (footnote added).  His medical history of "neuropathic lower elbow

12   pain" required "alternative restraints," and he claims that his chrono prevents "physically

13   restrain[ing] [him] in such a manner by using mechanical restrains (handcuffs) [or] man[a]cles."

14   Id. at 5, 9 (brackets added).

15             Plaintiff alleges that on December 1, 2017, Defendant Uribe used excessive force when she

16   "disregarded [Plaintiff's] special medical chrono and proceeded to use the steel handcuffs anyway

17   improperly, placing his hands behind his back causing him extreme pain in [his] left wrist and

18   aggravating a swollen wrist abscess full of fluid[] on his right wrist and left arm."  Id. at 5.

19   Plaintiff asserts that Defendant Uribe handcuffed Plaintiff in order to search his cell, and she left

20   the "tight handcuffs on his wrists for 3 hours while [she] and Defendant Garcia searched his cell."

21   _____

22         IMSP&P    Inmate Medical Services Policies and Procedures
           O.P.      Operational Procedure
23         PCP       Primary Care Physician
           PLRA      Prison Litigation Reform Act of 1995
24         SVSP      Salinas Valley State Prison

25             [4] Page number citations refer to those assigned by the court's electronic case management
     filing system and not those assigned by the parties.
26
               [5] Dr. Javate is not a party in this action.
27
               [6] A "chrono," also known as a "comprehensive accommodation chrono," is a form that
28   allows prisoners to request certain medical accommodations as deemed necessary by medical
     staff.

                                                     3

United States District Court
Northern District of California

1  *Id.* Plaintiff asserts that he did nothing to provoke Defendant Uribe to use such force, and that the

2  cell search was done as "discipline for Plaintiff['s] slow response to her orders to lock up." *Id.*

3  Plaintiff submitted multiple "sick call slips" related to the incident complaining that he had

4  been "injured by the handcuffing by [Defendant] Uribe and . . . [was] suffering pain and disability

5  in his right wrist." *Id.* at 6. Plaintiff alleges that Defendant Bright failed to provide adequate

6  treatment for Plaintiff's aforementioned injuries, and "abused his discretion in denying the

7  recommendations [by] Doctor Javate for offsite medical treatment of the 'Ganglion Cyst' on his

8  wrist made worse or aggr[a]vated by the use of mechanical restraints." *Id.* at 7, 11.

9  According to Plaintiff, Defendant Garcia "aided [Defendant] Uribe in the cover up of the

10  use of excessive force [by] deliberately sabotaging the CDC-602 grievanc[e] filed by [Plaintiff]."

11  *Id.* at 10. Specifically, Defendant Garcia received Plaintiff's complaint relating to the December

12  1, 2017 incident involving Defendant Uribe's use of excessive force and failed to file it. *Id.*

13      **C.  Defendants' Version**

14          **1.  Plaintiff's Chrono and Related Medical Treatment/Care Provided**

15              **a.  Plaintiff's Chrono Regarding Left-Arm Pain**

16  Defendants submitted evidence in support of their motion for summary judgment. Plaintiff

17  submitted a verified complaint but did not submit any evidence in opposition to Defendants'

18  motion. Therefore, Defendants' evidence shall be treated as undisputed unless disputed by

19  admissible factual assertions in the verified complaint.

20  Plaintiff has been enrolled in the Chronic Care Program for many years. Bright Decl. ¶ 18.

21  In this program, his medical conditions and medication needs were closely monitored. *Id.*

22  On November 10, 2015, prior to Plaintiff's arrival at SVSP, a San Quentin State Prison

23  physician documented Plaintiff's history of nerve pain, pain medications, and complaints of left-

24  arm pain from a previous gunshot wound in 2010. *Id.* ¶ 22, Ex. S. At that time, Plaintiff obtained

25  a CDCR Form 7410 comprehensive accommodation chrono or "restraint alert" chrono ("chrono")

26  which applies to Plaintiff's left-arm pain caused by a previous gunshot wound and a partial loss of

27  range of motion to the elbow. *Id.*, Ex. R. In the one-page chrono with checked boxes, Plaintiff's

28  housing is restricted to "bottom bunk" on a "permanent" time frame. *Id.* Under the section

United States District Court
Northern District of California

"Other" is his "Restraint Alert for Non-Emergent Escort or Transportation." *Id.*  In addition, Plaintiff has a "[l]ifting restriction," which indicates that he is "[u]nable to lift more than 19 pounds." *Id.*  No other boxes are checked on this chrono.  *Id.*

Defendants assert that the chrono did not comply with the CDCR Form 7410 reference sheet established by the California Correctional Health Care Services' Inmate Medical Services Policies & Procedures ("CCHCS' IMSP&P"), which shows when an upper extremity orthopedic condition would necessitate a restraint-alert chrono.  *Id.* ¶ 23, Ex. T.  The San Quentin State Prison physician did not include any supporting documentation to justify his chrono, and thus that physician was unclear as to what type of restraint limitation Plaintiff needed.  *Id.*, Ex. R.  Moreover, the chrono did not specifically state that it prohibits the use of handcuffs on Plaintiff and did not notify custody staff that any restraint of Plaintiff with handcuffs would cause him pain or injury.  *Id.*

Medical staff do not provide direction to custody staff on how to restrain inmates using handcuffs.  *Id.* ¶ 24.  Medical staff only advise custody staff that in non-emergent situations, certain inmates should not be handcuffed with a standard handcuff behind the back in order to avoid possible pain and injury.  *Id.*  Handcuffing male inmates in the front is not authorized.  *Id.*, *See* Ex. U.

Inmate-patients are given a copy of their chronos.  *See* Health Care Dept. Operations Manual ("DOM"), § 3.6.2 Comprehensive Accommodation subsection 4(K).  Inmates should maintain a copy of a chrono in order to alert custody staff to any limitations on the use of restraints.  *Id.* ¶ 24.  If mechanical restraints are required and the inmate notifies custody staff about a medical limitation, custody staff will use due diligence to reasonably accommodate the inmate's needs.  Uribe Decl. ¶ 12; Garcia Decl. ¶ 10.  If the inmate properly notifies custody staff about a chrono that limits the use of restraints, staff can check the inmate's central file to confirm the chrono.  *Id.*; Bright Decl. ¶ 24.

### 2. Plaintiff's Ganglion Cyst

Plaintiff first reported a ganglion cyst on his right wrist on August 9, 2016.  Bright Decl. ¶ 9, Ex. B.  A ganglion cyst is a small sac of fluid that forms over a joint or tendon (tissue that

connects muscle to bone). *Id.* ¶ 8. It usually appears as a bump (mass) that is soft, changes size, but does not move. *Id.* Ganglion cysts most commonly occur on the back of the hand at the wrist joint but can also develop on the palm side of the wrist. *Id.* The cause of ganglion cysts is not known. *Id.*

Plaintiff's ganglion cyst was continuously monitored by his health care providers. *Id.* ¶ 19. It was aspirated on February 12, 2019 and by March 15, 2019, it was smaller with minimal symptoms and Plaintiff had good hand strength. *Id.* A review of Plaintiff's Electronic Healthcare Records System ("EHRS")[7] confirms that at no time between December 1, 2017 and August 7, 2018 was the ganglion cyst on Plaintiff's right wrist a serious medical condition. Bright Decl. ¶ 26. Additionally, a single handcuffing on December 1, 2017 would have no effect on Plaintiff's cyst or induce pain and enlargement of the cyst. *Id.*

### 3. SVSP's Policies on Random Cell Searches

SVSP's Operational Procedure ("O.P.") #19 states that floor officers will conduct a minimum of three random cell/bunk/locker searches/inspections within each individual housing unit on a daily basis. Garcia Decl. ¶ 5; Uribe Decl. ¶ 5. Random cell searches are permissible to maintain institutional security in state prisons under the California Code of Regulations, Title 15, § 3287. Random cell searches are an integral part of maintaining security and safety in the prison, and they are performed to control contraband and discover safety hazards. *See id.*; O.P. #19.6. Contraband includes any items that pose a threat to the safety and security of the institution. O.P. #19.7. For example, contraband could be any items altered from their original manufacture or design, or not allowable pursuant to DOM §§ 54030.20.2-54030.7.2. *Id.* All contraband is documented on a confiscated cell-search receipt, and if not considered criminal evidence, will be disposed of as "Hot Trash." *Id.* Written notice of all contraband removed from a cell and disposed of is recorded on two separate forms, with one form given to the inmate and the other placed with the contraband property. O.P. #19.6 and #19.7.

---

[7] Starting in late 2016, inmates' medical records are stored in an electronic system called EHRS, which contains an inmate's medical records in the custody of CDCR. These records are accessible by authorized personnel.

#### 4. December 1, 2017 Random Cell Search of Plaintiff's Cell

As part of their duties on December 1, 2017, Defendants Uribe and Garcia randomly searched cell numbers 229, 235, and 243. Garcia Decl. ¶ 4; Uribe Decl. ¶ 4. At approximately 7:30 p.m., the officers approached cell number 229 to begin their first cell search that day. *Id.* ¶ 7; *Id.* ¶ 7. Cell number 229 was assigned to Plaintiff and his cellmate. Garcia Decl. ¶ 7; Uribe Decl. ¶ 7. During the search of cell number 229, contraband[8] contaminated with fungus was discovered, confiscated, and documented on two confiscated cell-search receipts, with a copy given to Plaintiff. Garcia Decl. ¶ 8; Uribe Decl. ¶ 8. Prior to any cell search, the inmates housed in the cell being searched are relocated, and they are usually escorted to the shower located on the same tier. Garcia Decl. ¶ 7; Uribe Decl. ¶ 7. Once the inmates are in the shower, the door is locked, and the cell search can begin. *Id.* Each cell search usually takes no more than ten to fifteen minutes, and the inmates are returned to their cells after the search is completed. Garcia Decl. ¶ 8; Uribe Decl. ¶ 10. Mechanical restraints are not typically used or needed in the general population housing units like Facility B, Housing Unit 5. Garcia Decl. ¶ 10. There was generally no need, nor were there standing orders given, that required inmates whose cells are being randomly searched, to be restrained at that time. Uribe Decl. ¶ 7. If mechanical restraints were needed and used on Plaintiff that day, Defendant Uribe would have noted it in the unit logbook and notified her supervisor. Uribe Decl. ¶ 18. Defendant Uribe does not recall ever applying mechanical restraints to Plaintiff during the time Plaintiff was housed in the general population unit she was working in for approximately a year and a half. *Id.* Defendant Garcia has no recollection of Plaintiff being placed in handcuffs on December 1, 2017, or ever handcuffing Plaintiff during her assignment in Housing Unit 5. Garcia Decl. ¶¶ 7 & 9. Plaintiff, however, claims he was handcuffed before the cell search. Dkt. 1 at 5. If restraints are necessary or required when moving an inmate and the inmate notifies the officer regarding his medical limitations, both Defendants Uribe and Garcia state that they do their due diligence to reasonably accommodated the inmate's needs. Garcia Decl. ¶ 10; Uribe Decl. ¶ 12. If any inmate informs the officers that he has a medical chrono

---

[8] The records show that the contraband found was wet magazines/books wrapped in a tee-shirt in a way which "suggested that the inmates were using it as inmate-manufactured weights, which are not allowed" in prison. Garcia Decl. ¶ 8; *see also* Uribe Decl. ¶ 8.

1   requiring a specific accommodation related to restraints, either Defendant Uribe or Defendant

2   Garcia would need to confirm the accommodation in the Strategic Offender Management System,

3   or call the medical clinic and ask them to run a search of the inmate's accommodation chronos.

4   Garcia Decl. ¶ 10; Uribe Decl. ¶ 12.  Plaintiff did not show or provide a chrono regarding any

5   restraint alerts to either Defendant Uribe or Defendant Garcia on December 1, 2017.  Garcia Decl.

6   ¶ 9; Uribe Decl. ¶ 11.  Neither officer observed Plaintiff having any physical limitations.  *Id.*

7   Plaintiff never informed or reported any injuries, pain, or suffering to either Defendant Uribe or

8   Defendant Garcia.  *Id.* ¶ 11; *Id.* ¶ 17.  If any inmate reports any pain or suffering, Defendants

9   Uribe and Garcia would give the inmate a request for medical assistance form to submit.  *Id.*  If

10  the inmate appeared to be in acute distress, the officer would activate his or her personal alarm and

11  notify medical staff to respond to the inmate's needs.  *Id.*

### 5.   Medical Records or Other Evidence Showing Plaintiff's Alleged Injury

13          Assuming Plaintiff actually was handcuffed on December 1, 2017, Plaintiff's health care

14  records do not establish that he suffered any injuries from the alleged handcuffing.  Bright Decl.

15  ¶ 26.  Handcuffing would not affect Plaintiff's cyst or induce pain and enlargement.  *Id.* ¶ 9.

16  Plaintiff has been continuously monitored by his health care providers and received appropriate

17  health care treatment and pain medications for his chronic left-elbow pain.  *Id.* ¶ 27.

18          Four days after the incident, Plaintiff filed a request for health care services form, stating

19  there is "a knot on my wrist, it usually comes and goes," but he claims that, since "12-1-17 when I

20  was placed in handcuffs by a C.O. it came back and it's extremely hard like a rock.  It never has

21  been this hard before."  Bright Decl. ¶ 10, Ex. D.  This request does specifically assert that he was

22  in any pain.  *Id.*  Over two months later, on February 28, 2018, Plaintiff refused to be seen by his

23  PCP regarding the ganglion cyst on his right wrist.  *Id.* ¶ 11, Ex. E.  During the next four months,

24  between March and June 2018, Plaintiff filed four additional CDC No. 7362, Health Care Services

25  Request Forms, on March 4, May 25, June 10, and June 21, 2018.  With each request, Plaintiff

26  noted his belief that the cyst was getting bigger.  *Id.* ¶ 12, Exs. G-I.  Plaintiff's June 10 request

27  alleged that his cyst grew bigger since he was placed in handcuffs, and he stated as follows:

28  "[E]very time I'm placed in cuffs it irritates the knot on my wrist."  *Id.* Ex. H.

United States District Court
Northern District of California

### 6. Plaintiff's Related 602 Inmate Appeals

Plaintiff's complaint asserts he exhausted two 602 inmate appeals ("appeals" or "grievances") related to the issues in this case: log numbers SVSP 18-00421 and SVSP 18-00491. Dkt 1 at 1. Plaintiff's first grievance, log number SVSP 18-00421, was a staff complaint received on January 16, 2017. Papan Decl., Ex. B. Plaintiff asserts he was "handcuffed wrongly and placed in a shower" while his cell "was being searched by [Defendant] Uribe." *Id.* Plaintiff's grievance states he told Defendant Uribe he had "a special cuffing chrono and she has to hand cuff [him] frontward due to a gunshot injury to [his] left dominant arm . . . ." *Id.* This grievance focuses on the cell search and Plaintiff's cell search receipts, alleging Defendant Uribe altered a receipt to suggest Plaintiff's confiscated property was used as weights, which was contrary to his chrono that identified his lifting restriction, which limited him to lifting nothing above 19 pounds." *Id.*; *see also* Bright Decl., Ex. R. Following an investigation and interviews, both the second and third levels of review concluded that staff did not violate policy as alleged by Plaintiff. Papan Decl., Ex. B.

Plaintiff's second grievance, log number SVSP 18-00491, was received on January 19, 2018. *Id.*, Ex. C. Plaintiff asserted Defendant Uribe should not have searched his cell on December 1, 2017 because it had been searched on November 29, 2017. *Id.* Plaintiff also claimed that she damaged his property and misplaced his family photos. *Id.* Plaintiff requested the return of his personal belongings. *Id.* Following an investigation and interviews, Plaintiff's grievance was denied at all levels of review. *Id.*

Plaintiff's complaint does not reference any health care grievances, but his health care grievance history reveals that he initiated three health care grievances originating from SVSP: log numbers SVSP HC 18001752, SVSP HC 18002212, and SVSP HC 19000244. Gates Decl. ¶ 8, Ex. A. Two of Plaintiff's health care grievances involve claims related to the care of his right wrist (log numbers SVSP HC 18001752 and SVSP HC 19000244), but only one (log number SVSP HC 18001752) was initiated between December 1, 2017 (the incident date) and November 15, 2018 (the date he filed his lawsuit). *Id.* ¶ 9, Exs. B-D. Log number SVSP HC 18001752 is also the only health care grievance that Plaintiff exhausted at the headquarters level. *Id.* Plaintiff

United States District Court
Northern District of California

asserted a staff complaint/deliberate indifference claim, alleging: (1) a registered nurse delayed his

medical treatment from January 2018 to May 2018 regarding his right wrist; (2) the medication

prescribed, naproxen 500 mg., sometimes caused his wrist to go numb; and (3) the need for

surgery to drain fluid in the knot on his right wrist.  *Id.* ¶¶ 10-12, Ex. B.  Headquarters level

reviewing authority found that Plaintiff's issue did not meet the criteria established for a staff

complaint level of review.  *Id.* ¶ 12.  The basis for the headquarters level decision noted Plaintiff

was enrolled in the Chronic Care Program, where his medical conditions and medication needs

were closely monitored.  *Id.*  The reviewing authority's disposition decided no intervention was

needed.  *Id.*

## III.    DISCUSSION

### A.    Legal Standard for Summary Judgment

Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate

that there is "no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those that may affect the

outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a

material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those

portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue

of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will

have the burden of proof on an issue at trial, it must demonstrate affirmatively that no reasonable

trier of fact could find other than for the moving party.  But on an issue for which the opposing

party will have the burden of proof at trial, the moving party need only point out "that there is an

absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the

pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

genuine issue for trial."  Fed. R. Civ. P. 56(e).  The court is concerned only with disputes over

material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted."

*Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law."  *Celotex*, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

The failure to exhaust administrative remedies is an affirmative defense that must be raised in a motion for summary judgment.  *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc).  The defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy."  *Id.* at 1172.  If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Id.*  The ultimate burden of proof remains with defendants, however.  *Id.*  "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  *Id.* at 1166.

### B.    Evidence Considered

A district court may consider only admissible evidence in ruling on a motion for summary judgment.  *See* Fed. R. Civ. P. 56(e); *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

In support of their dispositive motion, Defendants have presented their own declarations and supporting exhibits, as well as declarations and supporting exhibits from the following: CCHCS Chief of the Health Care Correspondence and Appeals Branch S. Gates and Defendants' attorney, Deputy Attorney General Virginia Papan.  Dkts. 20-1 – 20-6.

Meanwhile, as mentioned Plaintiff has not filed an opposition, but he has filed a verified complaint.  Dkt. 1.  The court construes the complaint as an affidavit under Federal Rule of Civil Procedure 56, insofar as they are based on personal knowledge and set forth specific facts

admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

### C.   Analysis

#### 1.   Injunctive Relief Claims

Plaintiff seeks injunctive relief as well as monetary damages.  The jurisdiction of the federal courts depends on the existence of a "case or controversy" under Article III of the Constitution.  *PUC v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996).  A claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted: "Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented."  *Flast v. Cohen*, 392 U.S. 83, 95 (1968).  Where injunctive relief is involved, questions of mootness are determined in light of the present circumstances.  *See Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996).

When an inmate has been transferred to another prison and there is no reasonable expectation or demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot. *See Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995).  A claim that the inmate might be re-transferred to the prison where the injury occurred is too speculative to overcome mootness.  *Id.*

Plaintiff seeks injunctive relief to remedy his alleged injuries stemming from constitutional violations during his previous incarceration at SVSP.  However, Plaintiff has since been transferred to Santa Rita Jail.  Because Plaintiff is no longer incarcerated at SVSP, his claims for injunctive relief based on his confinement at SVSP are DISMISSED as moot.  The Court now proceeds to review Plaintiff's remaining claims for monetary damages.

#### 2.  First Amendment Claim Against Defendant Garcia

Plaintiff claims that Defendant Garcia "aided [Defendant] Uribe in the cover up of the use of excessive force [by] deliberately sabotaging the CDC-602 grievanc[e] filed by [Plaintiff]."  Dkt. 1 at 10.  Specifically, Plaintiff asserts that Defendant Garcia received Plaintiff's complaint relating to the December 1, 2017 incident involving Defendant Uribe's use of excessive force and failed to file it.  *Id.*

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996). The right of meaningful access to the courts extends to established prison grievance procedures. *See Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) *abrogated on other grounds by Shaw v. Murphy*, 532 U.S. 223 (2001); *accord Hines v. Gomez*, 853 F. Supp. 329, 331-32 (N.D. Cal. 1994). This right is subsumed under the First Amendment right to petition the government for redress of grievances, *see id.* at 333, and protects both the filing, *see id.*, and content, *see Bradley*, 64 F.3d at 1279, of prison grievances. Regulations that punish an inmate for using "hostile, sexual, abusive or threatening" language in a written grievance, for example, are not reasonably related to penological interests and therefore violate the First Amendment. *See id.* at 1279-82.

Although there is a First Amendment right to petition the government for redress of grievances, there is no right to a response or any particular action. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) ("prisoner's right to petition the government for redress ... is not compromised by the prison's refusal to entertain his grievance."). Furthermore, a prison official's failure to process grievances, without more, is not actionable under section 1983. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that prisoner's claimed loss of a liberty interest in the processing of his appeals does not violate due process because prisoners lack a separate constitutional entitlement to a specific prison grievance system).

Here, Defendants argue that Plaintiff's sweeping conclusory allegations against Defendant Garcia will not suffice to defeat summary judgment. Dkt. 20 at 26 (citing *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (A person deprives another of a constitutional right within the meaning of section 1983 if he does an affirmative act, participates in another's affirmative act or omits to perform an act, which he is legally required to do, that causes the deprivation of which the plaintiff complains.)). The court agrees. The record shows that correctional floor officers do not handle inmate grievances, and thus Defendant Garcia was not legally required to process any inmate grievances. *See* Garcia Decl. ¶ 14. The established procedure for inmates who wish to submit a grievance requires the inmate to put the CDCR form 602 directly into a locked appeal

United States District Court
Northern District of California

13

box at the officer's desk, where it is picked up by the appeals office once a day and processed by the appeals office. *See id.* The record confirms that Plaintiff is aware of the procedure for submitting grievances because he successfully filed two grievances relating to the December 1, 2017 incident, which were dated January 19, 2018 (log number SVSP-18-00421) and February 28, 2018 (log number SVSP-18-0091). *See* Dkt. 1 at 1-2; Papan Decl., Exs. B-C.

In this case, Defendant Garcia contends under penalty of perjury that she "did not receive or pick-up any inmate grievance from [Plaintiff]," and that "if [Plaintiff] or any other inmate [had] left an inmate grievance in [the] mail for pick-up, [Defendant Garcia] would [have] return[ed] it to [Plaintiff] and [told] him to file it in the appeals box." Garcia Decl. ¶ 15. In a conclusory manner, Plaintiff claims that Defendant Garcia "did receive the [grievance] on December 1st, 2017, and that [the grievance] was never filed with institution[']s office of appeals." Dkt. 1 at 10. Even if it were true that Defendant Garcia received and failed to file the December 1, 2017 grievance, her failure, without more, would not be actionable under section 1983. *See Buckley*, 997 F.2d at 495; *Flick*, 932 F.2d at 729.

It is undisputed that Plaintiff was permitted to file grievances at SVSP, and that he was able to submit grievances regarding the facts at issue in this case—including Defendant Uribe's alleged use of excessive force. *See* Dkt. 1 at 1-2; Papan Decl., Exs. B-C. Plaintiff does not dispute this, and thus he has failed to show evidence that Defendant Garcia's actions prevented him from exercising his First Amendment rights to file grievances. Based on the foregoing, Defendants have established the absence of a genuine issue of material fact with respect to the First Amendment claim against Defendant Garcia. *See Celotex Corp.*, 477 U.S. at 323. In response, Plaintiff has failed to identify with reasonable particularity any evidence that precludes summary judgment. *See Keenan*, 91 F.3d at 1279. Accordingly, Defendants are entitled to summary judgment on this claim. *Id.*; *see Celotex Corp.*, 477 U.S. at 323.

### 3. Eighth Amendment Claim Against Defendant Bright

Defendants argue that Plaintiff did not exhaust available administrative remedies regarding his claim against Defendant Bright for Eighth Amendment deliberate indifference to serious medical needs, as required by the PLRA. Dkt. 1 at 11. Specifically, Defendants point out that

14

Plaintiff only submitted three health care appeals at SVSP: log numbers SVSP HC 18001752, SVSP HC 18002212, and SVSP HC 19000244.  Gates Decl. ¶ 9.  One of them, log number SVSP HC 18002212, is irrelevant to the claims in the instant action as it was filed nine months later after the December 1, 2017 incident and involved an allegation that a nurse "refused to give him his PM medication and he wanted this pain medication given to him nightly so he can sleep."  *Id.* ¶ 13, Ex. C.  The two remaining health care grievances involved claims related to the care of his right wrist (log numbers SVSP HC 18001752 and SVSP HC 19000244), but only one of them (log number SVSP HC 18001752) was initiated during the relevant time frame of this action.[9]  *Id.* ¶ 9, Exs. B, D.

Log number SVSP HC 18001752 was the only health care grievance that Plaintiff exhausted at the headquarters level.  *Id.*  In this grievance, Plaintiff asserted a staff complaint/deliberate indifference claim, alleging: (1) a registered nurse delayed his medical treatment from January 2018 to May 2018 regarding his right wrist; (2) the medication prescribed, naproxen 500 mg., sometimes caused his wrist to go numb; and (3) the need for surgery to drain fluid in the knot on his right wrist.  *Id.* ¶¶ 10-12, Ex. B.  Defendants argue that Plaintiff never submitted any grievance to the headquarters level with allegations against Defendant Bright or Defendant Bright's treatment of Plaintiff's alleged injuries from being handcuffed on December 1, 2017.  *Id.* ¶ 15.  Thus, Defendants argue that Plaintiff did not exhaust his administrative remedies as to his Eighth Amendment claim against Defendant Bright, and they are entitled to summary judgment on this claim.  *Id.*

Before turning to its analysis, the court briefly reviews the requirements of the PLRA and administrative review process applicable to California prisoners.

### a.  Legal Framework

The PLRA requires a prisoner to exhaust "available administrative remedies" before

---

[9] Log number SVSP HC 19000244 is irrelevant to the claims in the instant action because it was filed on February 22, 2019, more than a year after the December 1, 2017 incident.  Gates Decl. ¶ 14, Ex. D.  In SVSP HC 19000244, Plaintiff claims that on February 12, 2019, an unnamed doctor (who is not a party to this action) conducted the aspiration of the ganglion cyst on his right wrist but failed to remove the entire cyst causing stiffness and pain.  *Id.*

United States District Court
Northern District of California

1  bringing an action with respect to prison conditions.  42 U.S.C. § 1997e(a).  "[T]he PLRA's

2  exhaustion requirement applies to all inmate suits about prison life, whether they involve general

3  circumstances or particular episodes, and whether they allege excessive force or some other

4  wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

5        Exhaustion of all "available" remedies is mandatory; those remedies neither need meet

6  federal standards, nor must they be "plain, speedy, and effective."  *Booth v. Churner*, 532 U.S.

7  731, 739-40 (2001).  The PLRA requires *proper* exhaustion of administrative remedies.  *Woodford*

8  *v. Ngo*, 548 U.S. 81, 83 (2006).  "Proper exhaustion demands compliance with an agency's

9  deadlines and other critical procedural rules because no adjudicative system can function

10  effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90-

11  91.  Thus, compliance with prison grievance procedures is required by the PLRA to exhaust

12  properly.  *Id.*  The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or

13  otherwise procedurally defective administrative grievance or appeal."  *Id.* at 84.

14        The CDCR provides its inmates and parolees the right to appeal administratively "any

15  policy, decision, action, condition, or omission by the department or its staff that the inmate or

16  parolee can demonstrate as having a material adverse effect upon his or her health, safety, or

17  welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).[10]

18        To initiate an appeal, the inmate or parolee must submit a CDCR Form 602 describing the

19  issue to be appealed to the Appeals Coordinator's office at the institution or parole region for

20  receipt and processing.  *Id.* § 3084.2(a)-(c).  The level of detail in an administrative grievance

21  necessary to exhaust a claim properly is determined by the prison's applicable grievance

22  procedures.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).  The level of specificity required in the

23  appeal is described in the California Code of Regulations as follows:

24              The inmate or parolee shall list all staff member(s) involved and shall
            describe their involvement in the issue.  To assist in the identification

25              of staff members, the inmate or parolee shall include the staff

26   

---

27  [10] The regulations pertaining to the inmate appeal process were amended effective January
28, 2011.  Plaintiff's grievances were submitted *after* January 28, 2011; therefore, the amended
regulations were in effect and govern his grievances.

28

1

United States District Court
Northern District of California

member's last name, first initial, title or position, if known, and the
dates of the staff member's involvement in the issue under appeal.

2   Cal. Code Regs. tit. 15, § 3084.2(a)(3) (emphasis added).

3          Prisoners may file complaints regarding healthcare policies, decision, actions, conditions,

4   or omissions using a CDCR Form 602.  Cal. Code Regs. tit. 15, §§ 3999.226, 3999.227(a).  Such

5   complaints are subject to two levels of review—an institutional level of review and a headquarters

6   level of review.  *Id.*  Health care grievances are subject to a headquarters' disposition before

7   administrative remedies are deemed exhausted.  Cal. Code Regs. tit. 15, § 3999.226(g).

8          All levels of health care appeals/grievances, including the institutional and headquarters

9   levels of review, are tracked through a computer database known as the Health Care Appeals and

10  Risk Tracking System.  Gates Decl. ¶ 4.

11                   **b.   Defendants' Initial Burden of Proving a Failure to Exhaust**

12         Defendants argue that Plaintiff failed to exhaust administrative remedies relating to his

13  Eighth Amendment claim against Defendant Bright because that claim is not contained in his three

14  submitted health care appeals, log numbers SVSP HC 18001752, SVSP HC 18002212, and SVSP

15  HC 19000244.  Gates Decl. ¶¶ 9, 13-14, Exs. B-D; Dkt. 20 at 17-18.  The court finds that nothing

16  in Plaintiff's prison record shows that he submitted grievances to the final level of review

17  appealing medical claims related to the allegations against Defendant Bright or Defendant Bright's

18  treatment of Plaintiff's alleged injuries from being handcuffed on December 1, 2017.  *See id.*

19  Therefore, the evidence submitted by Defendants satisfies their initial burden of proving that there

20  were available administrative remedies for Plaintiff, and that Plaintiff failed to exhaust those

21  remedies properly, *see Albino*, 747 F.3d at 1172.

22                  **c.   Plaintiff's Burden of Proving Unavailability of Administrative Remedies**

23         Defendants adequately have shown that there were available administrative remedies that

24  Plaintiff did not exhaust fully as to his medical claims relating to the Eighth Amendment claim

25  against Defendant Bright.  As such, the burden shifts to Plaintiff "to come forward with evidence

26  showing that there is something in his particular case that made the existing and generally

27  available administrative remedies effectively unavailable to him."  *Albino*, 747 F.3d at 1166.

28  Improper screening of a prisoner's administrative grievances may excuse a failure to exhaust.  *See*

17

*Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010).  The prisoner must demonstrate "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id.* at 823-24.

Defendants have presented evidence that Plaintiff's prison records prove he did not submit grievances through CDCR's administrative grievance process concerning the Eighth Amendment claim against Defendant Bright.  Plaintiff's verified complaint does not discuss any of the aforementioned health care appeals. *See* Dkt. 1.

In Plaintiff's June 29, 2020 letter, which the court has not considered to be an opposition to the motion for summary judgment, Plaintiff claims that he "did file a 602 [appeal] on [Defendant] Bright around September 2018, but [he] left to [go to] another prison yard still on [SVSP] and never got a response." Dkt. 24 at 3.  Even if the court considered the assertion, it is too conclusory to meet Plaintiff's burden to establish unavailability of administrative remedies.  Although Plaintiff is not required to allege that he resorted to extraordinary measures in order to exhaust his administrative remedies, conclusory allegations that the administrative remedies process is inadequate are insufficient to defeat dismissal for failure to exhaust. *See White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997).  Plaintiff alleges that the administrative remedies were made unavailable to him, but the court is not required to scour the record to determine whether Plaintiff has made a particular argument in support of that allegation.  Thus, the conclusory evidence presented by Plaintiff is insufficient to defeat Defendants' motion for summary judgment as to the Eighth Amendment claim against Defendant Bright.  Furthermore, the fact that Plaintiff was able to file a total of three health care appeals at SVSP, one of which he pursued to the headquarters level of review, suggests that he had adequate access to the administrative appeals process. *See* Gates Decl. ¶¶ 9, 13-14, Exs. B-D.  The evidence produced by Defendants is sufficient to carry their ultimate burden of proof to show that Plaintiff's Eighth Amendment claim against Defendant Bright is unexhausted.  Accordingly, Defendants are entitled to summary judgment based on the failure to exhaust administrative remedies as to Plaintiff's Eighth Amendment claim against

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendant Bright, and their motion is GRANTED as to this claim.  Plaintiff's Eighth Amendment

2    deliberate indifference claim against Defendant Bright for monetary damages is DISMISSED

3    without prejudice to refiling after exhausting California's prison administrative process.

4                    **4.  Eighth Amendment Claim Against Defendant Uribe**

5            The court will now consider Defendants' argument as to the remaining Eighth Amendment

6    excessive force claim against Defendant Uribe that: (1) the undisputed material facts based on the

7    evidence fail to show that Defendant Uribe's actions of handcuffing Plaintiff were malicious and

8    sadistic for the purpose of causing harm; and (2) they are entitled to qualified immunity as to this

9    claim.  Dkt. 20 at 18-21, 22-23.

10           Plaintiff alleges that on December 1, 2017, Defendant Uribe used excessive force when she

11   "disregarded [Plaintiff's] special medical chrono and proceeded to use the steel handcuffs anyway

12   improperly, placing his hands behind his back causing him extreme pain in [his] left wrist and

13   aggravating a swollen wrist abscess full of fluid[] on his right wrist and left arm."  Dkt. 1 at 5.  In

14   its initial screening of Plaintiff's complaint, the court recognized this allegation as an Eighth

15   Amendment excessive force claim.  Dkt. 8 at 2-3.  Under that standard, Plaintiff must show that

16   prison officials acted "sadistically and maliciously" rather than in a "good faith effort to maintain

17   or restore discipline" in order to prevail.  *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)

18   (whenever prison officials stand accused of using excessive force in violation of Eighth

19   Amendment, core judicial inquiry is whether force was applied in good-faith effort to maintain or

20   restore discipline, or maliciously and sadistically to cause harm); *LeMaire v. Maass*, 12 F.3d 1444,

21   1452-54 (9th Cir. 1993) ("malicious and sadistic" standard applies where prisoner levels his

22   complaint at measured practices and sanctions used in exigent circumstances or imposed with

23   considerable due process to maintain control over difficult prisoners).

24           In determining whether the prison officials' use of force was for the purpose of

25   maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a

26   court may evaluate the need for application of force, the relationship between that need and the

27   amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the

28   responsible officials, and any efforts made to temper the severity of a forceful response.  *See*

*Hudson*, 503 U.S. at 7; *LeMaire*, 12 F.3d at 1454.  In weighing the *Hudson* factors, a court must accord prison administrators wide-ranging deference in the adoption and execution of policies and practices to further institutional order and security.  *Jeffers v. Gomez*, 267 F.3d 895, 917 (9th Cir. 2001).

Defendants point out that, "[a]s an initial matter, under CDCR policy, applying handcuffs is not even considered using force."  Dkt. 20 at 19 (citing DOM § 51020.6).  Moreover, Defendants stress that "random cell searches are an integral part of maintaining security and safety in the prison, and are performed to control contraband and discover safety hazards."  *See id.* (citing O.P. #19.6).  Defendants also point out that the December 1, 2017 search of Plaintiff's cell revealed items determined to be contraband, so those items were confiscated.  *Id.* (citing Garcia Decl. ¶ 5; Uribe Decl. ¶ 8).  Defendants argue that "[i]f the Court finds that applying handcuffs can be considered using force, then assuming Plaintiff's version of the story is true and Defendant Uribe did, in fact, put Plaintiff in handcuffs during the cell search, then the only force Defendant Uribe used was that which was necessary to ensure the safety and security of the prison."  *Id.* at 19-20.

Defendants are entitled to summary judgment on Plaintiff's excessive force claim because there is no genuine dispute of material fact that Defendant Uribe was acting in a good faith effort to maintain or restore discipline, and not sadistically and maliciously, if and when she handcuffed Plaintiff behind his back.  *See Hudson*, 503 U.S. at 6-7; *LeMaire*, 12 F.3d at 1452-54.

The undisputed facts show that on December 1, 2017, Defendants Uribe and Garcia randomly search cells (one of which belonged to Plaintiff).  Garcia Decl. ¶ 5; Uribe Decl. ¶ 7.  At about 7:30 p.m., Defendants Uribe and Garcia approached Plaintiff's cell and relocated Plaintiff and his cellmate.  *See id.*  According to Defendants Uribe and Garcia, the normal procedure during cell searches are as follows: they ask the inmates to step out of their cells for a cell search, escort the inmates to a holding area (the shower), and close the door in the holding area so they could begin their ten to fifteen-minute cell search.  *See id.*

Taking the facts in the light most favorable to the Plaintiff, the court assumes that he was handcuffed during this relocation as stated in his verified complaint.  Dkt. 1 at 5.  However,

United States District Court
Northern District of California

Plaintiff's claim that he was left in handcuffs for over three hours, *see id.*, is belied by the evidence, *see* Garcia Decl., Ex. A.  Defendant Garcia's logbook indicates that the search of cell number 229, which was Plaintiff's cell, began at 7:30 p.m., and then two other cells were searched—cell numbers 235 and 243.  Garcia Decl. ¶ 6, Ex. A.  The next entry in Defendant Garcia's logbook indicates that at 8:25 p.m., he "[r]eceived I/M [inmate]," and thus the cell searches were completed by that time.  *Id.*  Defendant Garcia states that the search of Plaintiff's cell "took approximately ten minutes and then [Plaintiff] and [his cellmate] were returned to their cell." *Id.* ¶ 8.

Although Plaintiff claims he has a "special medical chrono" mandating that he only be handcuffed in the front, the evidence in the record does not support his having that specific type of chrono at the time of the incident. *See* Bright Decl. ¶ 22, Ex. R.  First, it is important to note that Plaintiff's Restraint Alert for Non-Emergent Escort or Transportation" chrono applies only to Plaintiff's *left-arm* pain caused by a previous gunshot wound and a partial loss of range of motion to the elbow. *Id.*  The chrono does not apply to his *right* wrist, where the ganglion cyst was located.  *See id.*  The record also shows that this chrono was "unclear on what type of restraint limitation Plaintiff needed, and did not provide custody [staff] direction as to how to restrain [Plaintiff] using handcuffs." *Id.* ¶ 23, Ex. R.  Moreover, Plaintiff's chrono "did not completely prohibit any use of handcuffs on Plaintiff." *Id.*  The San Quentin State Prison physician who issued the chrono did not include any supporting documentation to justify his chrono, and thus that physician was unclear as to what type of restraint limitation Plaintiff needed. *Id.*  Moreover, the chrono did not provide custody staff any information notifying them that any restrain of Plaintiff with handcuffs would cause him pain or injury. *Id.*  Finally, the record shows that Plaintiff's ganglion cyst on his right wrist was a preexisting condition that he had first reported back in 2016, Bright Decl. ¶ 9, Ex. B, but Plaintiff admitted it "usually comes and goes," *id.* ¶ 10, Ex. D.  Thus, even if Plaintiff had presented Defendant Uribe with the chrono, summary judgment would still be proper.  Plaintiff has failed to set forth facts that would lead a reasonable juror to believe that Defendant Uribe acted sadistically and maliciously for the purpose of causing Plaintiff harm— specifically to his preexisting ganglion cyst on his right wrist—when she handcuffed him behind

United States District Court
Northern District of California

his back for ten to fifteen minutes while she searched his cell.  *See Hudson*, 503 U.S. at 6-7;

*LeMaire*, 12 F.3d at 1452-54.

An application of the *Hudson* factors to the facts in the record instead would lead a

reasonable juror to believe that Defendant Uribe acted in a good faith effort to maintain or restore

discipline and order.  *See id.*  There is no indication that the amount of force used was

disproportionate for the situation or that Plaintiff sustained significant injuries as the record shows

that "a single handcuffing on December 1, 2017 would have no effect on Plaintiff's [ganglion]

cyst or induce[d] pain and enlargement of the cyst."  Bright Decl. ¶ 26.  Contrary to Plaintiff's

claims, "[a] review of Plaintiff's EHRS confirms that at no time between December 1, 2017 and

August 7, 2018, was the ganglion cyst on Plaintiff's right wrist ever a serious medical condition."

*Id.* ¶ 9.  While Plaintiff made a health care services request four days after the incident, on

December 4, 2017, he did not complain of pain and instead stated that there is "a knot on my

wrist, it usually comes and goes," but he claims that since "12-1-17 when I was place[d] in

handcuffs by a C.O. it came back and it's extremely hard like a rock . . . ."  *Id.* ¶ 10, Ex. D.  The

record shows that Plaintiff was handcuffed only for ten to fifteen minutes (the time it took for the

cell search), and that he neither complained of nor exhibited any immediate signs of injury from

having been handcuffed for such a short time.  Uribe Decl. ¶¶ 10, 11; Garcia Decl. ¶¶ 8, 9.  There

is no evidence that either Defendant Uribe or Defendant Garcia knew that a single handcuffing

would cause, or did cause, Plaintiff harm.  Garcia Decl. ¶¶ 7, 9, 11, 12 ; Uribe Decl. ¶¶ 7, 11, 13;

Bright Decl. ¶¶ 23, 26, 27.

Plaintiff has failed to present any medical records or other evidence (other than his

unsupported statements) in support of his allegation that Defendant Uribe's use of handcuffs

during the cell search resulted in injury to his wrist.  Such conclusory allegations of injury without

medical records or other evidence of injury are insufficient to create a genuine issue of fact as to

Plaintiff's excessive force claim.  *See Marks v. United States*, 578 F.2d 261, 263 (9th Cir.1978)

("Conclusory allegations unsupported by factual data will not create a triable issue of fact.")

(citation omitted); *see, e.g.*, *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th

Cir. 2001) (finding the district court did not err in granting summary judgment because plaintiff

failed to meet her burden of proof of providing specific facts to show that the force used was unreasonable); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (summary judgment in favor of defendant doctor appropriate as to conclusory claim that doctor failed to adequately respond to respiratory arrest because record showed otherwise and such conclusory assertions insufficient to raise issue of material fact).  Under the circumstances, no reasonable juror could find that Defendant Uribe "sadistically and maliciously" handcuffed Plaintiff behind his back for the purpose of causing him harm.  *Hudson*, 503 U.S. at 6-7.

Defendants also are entitled to summary judgment on qualified immunity grounds.  Under *Saucier v. Katz*, 533 U.S. 194 (2001), the court must undertake a two-step analysis when, as here, Defendants assert qualified immunity in a motion for summary judgment.  The court first faces "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Id.* at 201.  If the court determines that the conduct did not violate a constitutional right, the inquiry is over, and the officer is entitled to qualified immunity.  If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks, "whether a right [was] clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 201-02.  Even if the violated right was clearly established, qualified immunity shields an officer from suit when he decides that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *Saucier*, 533 U.S. at 205-06.  If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense."  *Id.* at 205.

Viewing the facts in the light most favorable to Plaintiff, it cannot be said that reasonable officers in Defendant Uribe's position would have believed that they were acting unlawfully by handcuffing Plaintiff behind his back for ten to fifteen minutes during a cell search.  *See Saucier*, 533 U.S. at 201-02.  As discussed above, even if Plaintiff's allegations are taken as true, the undisputed material facts based on the evidence show that Defendant Uribe is entitled to qualified immunity because she acted in good faith to maintain safety and security.  There is no evidence

that Defendant Uribe's actions caused an Eighth Amendment violation, and a reasonable officer could have believed that her conduct in handcuffing an inmate during a cell search for a short period of time was lawful.  Moreover, Plaintiff's medical accommodation did not completely prohibit handcuffing and Plaintiff did not immediately report afterwards that he was in pain or injured.  Instead, Plaintiff waited four days after the incident before he filed a request of health care services, and then he failed to report any pain—just his belief that the handcuffing made his cyst "extremely hard."  Bright Decl. ¶ 10, Ex. D.  Therefore, Defendants are entitled to qualified immunity on this excessive force claim.  *See Brosseau*, 543 U.S. at 198.

Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's claim that Defendant Uribe violated his Eight Amendment rights by handcuffing him behind his back on December 1, 2017.  *See Celotex*, 477 U.S. at 323.

### 5. Negligence Claim

Although federal courts have supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a), they may decline to exercise it under 28 U.S.C. § 1367(c).  *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997).  Because summary judgment has been granted to Defendants on the federal claims in this case, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law negligence claim.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Bryant v. Adventist Health Sys./West*, 289 F.3d 1162, 1169 (9th Cir. 2002).  Therefore, Defendants' motion for summary judgment is DENIED as to Plaintiff's remaining negligence claim, and this claim is DISMISSED without prejudice to filing it in state court.

## IV.   CONCLUSION

For the reasons outlined above, the court rules as follows:

1.     Because Plaintiff is no longer incarcerated at SVSP, his claims for injunctive relief based on his confinement at SVSP are DISMISSED as moot.

2.     Defendants' motion for summary judgment (dkt. 20) is GRANTED in part on the basis that:

a.     there is no genuine issue of material fact with respect to Plaintiff's First

24

1    Amendment claim against Defendant Garcia;

2              b.       Plaintiff failed to exhaust administrative remedies as to his Eighth

3    Amendment deliberate indifference claim against Defendant Bright; and

4              c.       the undisputed material facts based on the evidence fail to show that

5    Defendant Uribe's actions of handcuffing Plaintiff were malicious and sadistic for the purpose of

6    causing harm, and Defendants are entitled to qualified immunity as to the Eighth Amendment

7    excessive force claim against Defendant Uribe.

8         2.     Defendants' motion for summary judgment (dkt. 20) is DENIED in part as to the

9    remaining state law claim of negligence, and such a claim is DISMISSED without prejudice to

10   filing in state court.

11        3.     The Clerk of the Court shall terminate all pending motions and close the file.

12        4.     This Order terminates Docket No. 20.

13        IT IS SO ORDERED.

14   Dated:  October 6, 2020

       _____
15                                              DONNA M. RYU
                                                United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25

26

27

28